WILLCOX & GIBBS SEWING MACHINE COMPANY, Plaintiff, *v.* JEHIEL W. HIMES, Defendant.

*Contract — waiver of a return, and as a consequence of any claim for rent, of machines.*

Upon the trial of an action, brought to recover an agreed rent for the use of certain machines, it appeared that the plaintiff leased to the firm of Himes & Vail, of which firm the defendant was the successor, a number of machines for manufacturing hosiery, etc., upon an agreement which provided three different modes of payment; the first was based upon the articles manufactured at certain sched-

ule prices, in case the lessee made no return; the second was the amount shown to be due by the return when such returns were made; the third was the payment of the sum of twenty-five dollars a month for each machine leased, as a rental during each and every month for which returns and payments had not been made.

The lessee had a right at any time to surrender the machines and terminate all liability under the contract.

The plaintiff brought the action to recover the sum of twenty-five dollars per month for each machine delivered to and retained by the defendant; the defendant interposed, among other defenses, the defense that the defendant had made a return to the plaintiff showing that during a certain period no goods had been manufactured, and had offered to surrender the machines, but, at the request of the plaintiff, had retained the machines.

In support of this defense, it appeared that early in 1885 and at the time of the last return made, there was written upon the face of that return the words "no production;" that at about this time a Mr. Garrett, the manager of the defendant's hosiery department, advised the defendant not to send back the machines, and said that the plaintiff was getting up a new machine which the plaintiff proposed to allow a few people to have; that it would be a great benefit to the trade and would be exclusive.

The court, however, refused to allow the defendant to show that he had manufactured no goods upon any of the machines after December 31, 1884.

*Held,* that it was erroneous for the court to direct a verdict for the plaintiff;

That, as the contract permitted the lessee to surrender the machines, provided he had fully performed the contract upon his part, he had a right to show, upon the question of the plaintiff's having waived the surrender, that he had manufactured no goods after the time of his conversation with Mr. Garrett, and thereupon a proper question would have arisen for the determination of the jury, as to whether it was intended that the defendant should pay any more rent after he had ceased to use the machines, had offered to return them, and had been requested not to do so. (Per O'Brien, J.)

Motion by the defendant, Jehiel W. Himes, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance upon the verdict of a jury in favor of the plaintiff rendered by direction of the court after a trial at the New York Circuit on the 12th day of February, 1895.

This action was brought upon a written contract made on the 11th day of February, 1882, by which the plaintiff let and hired to the firm of Himes & Vail, to which firm defendant succeeded, a number of its machines, upon the covenant that the lessee should use the machines in the manufacture of hosiery, shirts and drawers and should make monthly returns to plaintiff of the quantity of goods so manufactured therewith, and should make monthly pay

ments corresponding to such returns according to a schedule of rentals therein agreed to by the parties. The contract further provided that, at the option of the lessor, the lessee should pay to the lessor the sum of twenty-five dollars for each machine leased by him during each month for which the returns and payments required by the agreement had not been made. The defendant received eleven machines in all, the first having been delivered in February, 1882, and the last in April, 1884. Defendant made monthly returns and payments until January 1, 1885. Thereafter, in December, 1891, this action was commenced to recover the sum of twenty-five dollars per month for each machine delivered and retained by the defendant. The defenses are, the failure of plaintiff to allege or prove demand for the payment of the rates specified in the contract, or for the payment of twenty-five dollars a month for each machine let; the failure to prove that the defendant used any of the machines; and the defense of surrender.

On the trial defendant proved that early in 1885 he made a return covering the period from October 1, 1884, to December 31, 1884, both inclusive, and that upon the face of the return were written the words "No production." Defendant then offered evidence tending to show that he had manufactured no goods by any of the machines after December 31, 1884, but such evidence was excluded. He proved however that in December, 1885, he had a talk with one Mr. Garrett, a representative of plaintiff, in which the latter said, "You are not making any returns;" to which the defendant replied, "No, sir, we are not using the machines, and we are going to send them back." Mr. Garrett then urged him not to do so, stating that the plaintiff was getting up a new machine, which would be of great benefit to the trade and would be exclusive. From this time (December, 1885) until 1891 Garrett was in communication with the defendant about this promised new machine, known as the "overlock" machine.

Upon the conclusion of this testimony the court directed a verdict for the plaintiff and ordered the exceptions to be heard in the first instance at General Term.

*George W. Van Slyck*, for the plaintiff.

*Austen G. Fox* and *Arthur H. Masten*, for the defendant.

O'BRIEN, J. :

The first question relates to the construction of the written agreement entered into between the parties, and for its discussion a reference to its salient features is necessary. It provided that, upon certain considerations therein expressed, the plaintiff " doth hereby lease unto said lessee " the machines (describing them) " and the lessee hereby agrees to keep and perform all the conditions of the lease, to wit :

" *First.* * * * to pay unto the lessors as rent for the use of the machines hereby leased the following sums or rates for all goods made wholly or in part by the aid of said machines or any of them, viz. : " (Then follow the rates.)

" But in all cases where the lessee shall make the returns and payments as hereinafter required, according to the following schedule of rentals, * * * the following amounts will be accepted by the said lessor, * * * viz. : " (Then follows a schedule.)

" If, however, returns and payments are not made according to the provisions of this instrument, then the lessee shall be and is firmly held and bound to pay unto the lessor the amounts first hereinbefore specified ; or said lessor may, at its option, demand and collect, and said lessee hereby agrees to pay, the sum of $25 per month for each machine hereby leased during each and every month for which the returns and payments required by this agreement have not been made. * * *

" *Second.* The said lessee agrees to keep correct record of all goods manufactured," to be open to the inspection of said lessor, and to make returns monthly for all goods manufactured during the preceding month. " If no goods have been so manufactured during said month, the said lessee shall so report."

" *Fifth.* * * * But the lessee has the option at any time to surrender said lease and the machines mentioned herein, provided he shall have complied with all and singular the obligations of this instrument and settled his indebtedness to the lessor thereunder ; and upon such surrender of said lease and machines the lessee shall be discharged and released from all and any obligations, agreements and covenants herein assumed by him."

It will be noticed at the outset that the contract provided three different modes of payment ; one based upon the articles manufac-

tured at certain schedule prices in the event of the failure of the lessee to make returns; another, the amount shown to be due by the returns when returns were made; and the third, the sum of twenty-five dollars a month for each machine leased, as a rental during each month for which the returns and payments have not been made. It was thus in the power of the defendant to make returns and so limit the amount to which the plaintiff would be entitled. If, however, the defendant failed to make returns, then there were two ways provided by which the plaintiff could exact payment. If it could obtain the information as to the articles manufactured, it could charge the increased rate; or, waiving this, it had the option to exact from the defendant a rental of twenty-five dollars a month for each machine. The latter was the course followed. In the contract itself it will be found that nothing is said about the use of machines, but it is provided that the twenty-five dollars is for each machine *leased*, not, as contended for by defendant, for every machine *used*. We think the plaintiff's contention is sound, that the construction to be given to this language is the same as that to be given to contracts between landlord and tenant; and in an action for rent it clearly would be unavailing for the tenant to show that while he continued in possession of the premises he did not actually occupy them. So here, while the defendant continued in possession of the machines, he was liable under the contract the same as a tenant under a lease. Our view as to the construction of this part of the agreement is, that where no goods were manufactured the defendant could so report and relieve himself from the payment of rental; but where he did not report, or did not surrender the machines, but retained them, then he was liable to the plaintiff in the sum of twenty-five dollars a month for each machine retained, whether used in the manufacture of goods or not.

This naturally brings us to a consideration of the evidence adduced upon the trial in support of the defense that a report was made to plaintiff that no goods were being manufactured upon the machines, and that in December, 1885, an offer to surrender was made, which was not carried out because, at the request of plaintiff, the machines were retained. We think that if evidence was offered to support this defense from which the jury could have legitimately inferred that the parties to the agreement understood the situation

to be the same as it would have been had the defendant returned the machines, then it was error to direct a verdict and refuse defendant's request to go to the jury upon this question.

It will be recalled that early in 1885 defendant made a return covering the period from October 1, 1884, to December 31, 1884, inclusive, and that upon the face of the return were written the words "No production." As no returns were made for the year 1885, it may be that the court would have been justified in directing a judgment from that time down to the month of December, 1885, when, as testified to by the defendant, he had the conversation with the representative of the plaintiff, Mr. Garrett, in which the latter said, " You are not making any returns;" to which the defendant replied, ." No, sir, we are not using the machines and we are going to send them back." Mr. Garrett then said: " No, don't do that; we want to keep in with you people, a few of our friends; we are getting up a new machine which is going to be a great benefit to the trade, and it will be exclusive; we propose to let you and Mr. McDowell have it, as you have been using our old machines." Defendant further testified that from that time he never used the machines.

It is clear from the agreement that the defendant, by paying what was due up to December, 1885, when this conversation took place, could have surrendered the machines by returning them, and it is equally clear that such surrender and payment could be waived by the plaintiff, and, instead of being sent back, the machines could have been retained by defendant at plaintiff's request without his being liable to pay any rent therefor, provided they were not used in manufacturing goods. The defendant having given evidence from which it could be legitimately inferred that the provision of the contract as to the manner of surrender had been waived by plaintiff, followed up as it was by an offer of evidence tending to show that he had manufactured no goods by any of the machines after that time, we think a question was presented for the jury as to whether or not the parties to the agreement intended that the defendant should pay any sum whatever after he had ceased to use the machines and offered to return them and had been requested not to do so. As appears by the record, Mr. Garrett, with whom such conversation took place, was in court, but did not dispute defend

ant's evidence nor deny his own authority in the premises; and while upon this appeal the latter is called in question, the treasurer and secretary of plaintiff, who was intrusted with the management of the entire business, testified that Mr. Garrett "was manager for a number of years of the hosiery department, as it was called; that is the department through which those machines are leased and operated; it is a special department of the business through which the machines covered by the agreement put in suit here are leased and put on the market; he had entire charge of that matter under me; he had authority in that department to a certain extent; he would attend to the making of the leases, and attend to the receiving of the returns and keeping up the records, and generally taking care of that business in detail; sometimes he would make visits to the lessees in behalf of the company; that was so from 1882 until 1890 or 1891."

We think that upon such evidence there was a question of fact presented, and that the jury could infer that by reason of this conversation the defendant refrained from surrendering the machines, and that both parties understood that the situation was the same as it would have been if he had made the surrender in fact. This being so, the direction of a verdict was error, and there should be a new trial, with costs to defendant to abide the event.

VAN BRUNT, P. J., and FOLLETT, J.:

We concur in result. There was no question to go to a jury; the agreement of the parties was unambiguous and nothing was due if no goods were manufactured and no report was made, and the subsequent arrangement did away with the necessity of a report.

Exceptions sustained, new trial granted, with costs to defendant to abide event.